IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CARGOTEC OYJ, *et al.* :
:
:
v. : Civil No. CCB-11-2163
:
:
MOL SHIP MANAGEMENT CO., LTD., :
*et al.* :
:

## MEMORANDUM

The current third-party dispute stems from an action filed by plaintiff Potenciano L. Aggarao, Jr. ("Aggarao"), after he sustained severe injuries aboard the M/V Asian Spirit. Aggarao alleges that he was crushed between a pillar inside the ship and a mobile deck lifting machine designed and manufactured by defendants Cargotec OYJ, Cargotec Sweden, A.B., and Cargotec Japan, Ltd. (collectively, "Cargotec"). Following his injuries, he filed claims sounding in strict products liability against Cargotec. Then, pursuant to Fed. R. Civ. P. 14(a), Cargotec filed a third-party complaint against MOL Ship Management Co., Ltd., Nissan Motor Car Carrier Co., Ltd., and World Car Carriers, Inc. (collectively, "the Vessel Interests"), which manage, charter, and own the M/V Asian Spirit, respectively.[1] Cargotec's complaint contains two counts: Count I alleges the Vessel Interests were negligent, and Count II alleges they are liable to indemnify Cargotec and "contribute to any damages or judgment owed/paid" by Cargotec to

---

[1] Aggarao filed suit against the Vessel Interests on June 16, 2009. (*See Aggarao v. MOL Ship Mgmt. Co., Ltd.*, No. CCB-09-3106.) With one exception not relevant here, that case was stayed pending the results of arbitration in the Philippines. Pursuant to Aggarao's employment contract, the Philippine Overseas Employment Administration Contract of Employment ("the POEA Contract"), Aggarao's exclusive remedy against the Vessel Interests is arbitration in the Philippines. *See Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 375 & n.17 (4th Cir. 2012). It is undisputed that Cargotec is not a signatory to the POEA Contract.

1

Aggarao. (Cargotec's Third-Party Compl., ECF No. 82, at 5–7.) Now pending before the court is the Vessel Interests' motion to dismiss or, in the alternative, for summary judgment. The issues in this case have been fully briefed, and no hearing is necessary. *See* Local R. 105.6. For the reasons stated below, the motion will be granted.

## STANDARD

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. . . . However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (quotations and citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from

conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

As a preliminary matter, the court rejects the Vessel Interests' argument that the third-party complaint must be dismissed for lack of subject matter jurisdiction. Rule 8(a)(1) provides that a pleading must contain "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support." Fed. R. Civ. P. 8(a)(1). Although Cargotec's third-party complaint does not contain a jurisdictional statement, it is undisputed that the court already had jurisdiction over this matter by virtue of Aggarao's second amended complaint. (*See* ECF No. 62.) Moreover, Cargotec's claims are "so related" to Aggarao's action as to "form part of the same case or controversy." *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . .").[2] Thus, the complaint falls within the court's supplemental jurisdiction, and will not be dismissed for lack of jurisdiction.[3]

---

[2] The court notes that 28 U.S.C. § 1367(b) provides that:

> In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14 . . . when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

Thus, in a diversity action, the district court may not exercise jurisdiction over a non-diverse person made a party under Rule 14. Here, the court's jurisdiction is not based solely on diversity; rather, as indicated by Aggarao's second amended complaint, this court has admiralty jurisdiction under 28 U.S.C. § 1333. (*See* ECF No. 62 at 2.)

[3] The Vessel Interests cite no authority for their assertion that, because Cargotec does not explain why its claims do not require new jurisdictional support, the complaint must be dismissed. Indeed, the court has an independent and continuing duty to assess its subject matter jurisdiction.

3

Next, the court agrees with the Vessel Interests that Cargotec has failed to state a claim for negligence, and Count I must be dismissed. To state a claim for negligence, the admiralty plaintiff must "allege facts sufficient to support plausible claims that: (1) there was a duty owed by the defendant to the plaintiff; (2) the duty was breached; (3) the plaintiff sustained injury; and (4) there is a causal connection between the defendant's conduct and the plaintiff's injury." *Vollmar v. O.C. Seacrets, Inc.*, 831 F. Supp. 2d 862, 866 (D. Md. 2011); *see also Evergreen Intern., S.A. v. Norfolk Dredging Co.*, 531 F.3d 302, 308 (4th Cir. 2008) (citation and internal quotation marks omitted) (stating that "[t]he elements of a maritime negligence cause of action are essentially the same as land-based negligence under the common law, free of inappropriate common law concepts"). Cargotec does not allege, however, that the Vessel Interests owed it a duty. To get around this omission, Cargotec attempts to argue that the Vessel Interests have misread Count I. According to Cargotec, despite the fact that it is clearly labeled "Negligence," (Cargotec's Third-Party Compl. at 5), Count I is not actually "a separate cause of action" for negligence but rather articulates "a tort-based right to contribution." (Cargotec's Opp., ECF No. 116-1, at 5–6.) Thus, Cargotec indicates it "would consent to any ruling by the Court which simply denominates Cargotec's Third-Party Complaint as one carrying two causes of action against the Vessel Owners – one in contribution and one in indemnity." (*Id.* at 6 n.3.) But, as Count II requests contribution and indemnification, the court cannot agree that Count I also seeks contribution. The court will not ignore the plain language of the complaint and, accordingly, will dismiss Count I for failure to state a claim.

Turning to the indemnification claim contained in Count II, the court finds *White v. Johns-Manville Corp.*, 662 F.2d 243 (4th Cir. 1981), instructive. In that case, the Fourth Circuit

---

*See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982); *see also Plyler v. Moore*, 129 F.3d 728, 731 n.6 (4th Cir. 1997).

recognized that certain "fact patterns . . . generally give rise to the right of indemnification." *Id.* at 249. In particular, one who "is guilty only of passive, secondary or implied fault" may seek indemnification from one who "is guilty of active, primary or original fault." *Id.*; *see also Vaughn v. Farrell Lines, Inc.*, 937 F.2d 953, 957 (4th Cir. 1991); *Glover v. Johns-Manville Corp.*, 662 F.2d 225, 229 (4th Cir. 1981).

The third-party plaintiffs in *White*, Johns-Manville and several other manufacturers (collectively, "the manufacturers"), sought indemnification on the theory that they were only passively negligent, while the third-party defendant, Newport News Shipbuilding & Drydock Company ("Newport News"), was actively negligent. 662 F.2d at 249. The manufacturers had been sued after the plaintiffs, five Newport News employees, contracted asbestosis by working with products they manufactured; the plaintiffs sought relief "based upon theories of negligence, breach of implied warranty and strict liability." *Id.* at 246, 249. According to the manufacturers, if they were liable to the plaintiffs, then they were entitled to indemnification from Newport News, which failed to warn its employees of the dangers associated with the products. *Id.* at 246. The court dismissed the manufacturers' indemnification claim, reasoning that "[i]f the manufacturers are found liable . . . it will be because the trier of fact has determined that the tortious conduct charged to them by the plaintiffs has proximately caused compensable injuries." *Id.* at 249–50. "Whether in that process they are adjudged to have breached a duty to warn or an implied warranty, or whether they are held strictly liable, they would not then under any conceivable circumstances be able to characterize their resulting liability as being based upon technical, passive or secondary fault . . . ." *Id.* at 250. In sum, the manufacturers were not entitled to indemnity because "the only fault charged to [them] . . . [wa]s 'active' fault." *Id.*

Like the third-party plaintiffs in *White*, Cargotec is accused of active negligence.

5

Cargotec's potential liability to Aggarao is not based on the wrongful acts of another. Instead, Cargotec is accused of directly causing injury to Aggarao by violating safety rules in the design and manufacture of the deck lifting machine, failing to provide adequate warning of the machine's defects, failing to correct known defects, and warranting the machine was safe for use when it was not. (*See* ECF No. 62 at 9–17.) Accordingly, Cargotec cannot seek indemnification from the Vessel Interests.

The court must reject Cargotec's argument that dismissal of the indemnification claim would be "premature." (Cargotec's Opp. at 14.) To make this argument, Cargotec relies on *Williams v. United States*, 469 F. Supp. 2d 339 (E.D. Va. 2007), but reliance on that case is inapposite. In *Williams*, the plaintiff sued two defendants, and it was not clear which defendant was actively negligent and which was passively negligent. *Id.* at 343. Nevertheless, because the defendants would be jointly and severally liable to the plaintiff, they would be liable regardless of whether they were actively or passively negligent. Here, by contrast, Aggarao has sued only one defendant, Cargotec; indeed, Aggarao is prohibited from suing the Vessel Interests, and must arbitrate his claims against them. *See Aggarao*, 675 F.3d at 375 & n.17. Based on the allegations of Aggarao's complaint, Cargotec will only be found liable to Aggarao if it was actively negligent. Unlike in *Williams*, there is no possibility that Cargotec may be liable to Aggarao if it was passively negligent. Discovery, therefore, would not reveal any information that would allow the indemnification claim to proceed. *Cf. Pyramid Condominium Ass'n v. Morgan*, 606 F. Supp. 592, 596–97 (D. Md. 1985) (concluding based on the original complaint that the third-party plaintiff would be liable, if at all, only for active negligence and, as a result, could not seek indemnification from the third-party defendant).

As to Cargotec's claim for contribution, the court agrees with the Vessel Interests that it

must be dismissed because it is derivative of Aggarao's direct claims against the Vessel Interests, which are barred pursuant to the POEA Contract. Analogizing to U.S. workers' compensation statutes, the Vessel Interests argue that, when a plaintiff has an exclusive remedy against his employer, the employer may not be asked to contribute to a third party's liability to the plaintiff. This argument finds support in *Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp.*, 342 U.S. 282 (1952). In that case, Salvador Baccile ("Baccile") was injured while working aboard a ship. *Id.* at 283. Having been found liable to Baccile, Halcyon Lines sought contribution from Baccile's employer, Haenn Ship Ceiling & Refitting Corp. ("Haenn"). *Id.* The Supreme Court concluded that the contribution claim must be dismissed, refusing to establish a right of contribution where Baccile had an exclusive remedy against Haenn under the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"). *Id.* at 286–87; *see also Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 261 (1979).

Likewise, in *Cooper Stevedoring Co. v. Fritz Kopke, Inc.*, the Supreme Court indicated that contribution claims are permitted when the plaintiff could have proceeded in the same case directly against the party from whom contribution is sought. 417 U.S. 106, 112–13 (1974). The plaintiff in *Cooper Stevedoring*, who was injured while loading a vessel, filed suit against Fritz Kopke, Inc. and Alcoa Steamship Co. (collectively, "the Vessel Interests"), which owned and chartered the vessel, respectively. *Id.* at 107. The Vessel Interests then filed a third-party complaint against Cooper Stevedoring Co. ("Cooper"), arguing that, if they were liable to the plaintiff, then they were entitled to contribution from Cooper. *Id.* The Court determined that, unlike Baccile in *Halcyon Lines*, who could only seek relief against Haenn under the LHWCA, the *Cooper Stevedoring* plaintiff could have proceeded in this case directly against Cooper. *Id.* at 113. Unlike Haenn, Cooper was not shielded from liability under the LHWCA because it was

7

not the plaintiff's employer. *Id.* at 109–10, 112–13. Accordingly, the Vessel Interests could seek contribution from Cooper. *Id.* at 112–13.

Applying the principles from the above cases, under the POEA Contract, Aggarao's exclusive remedy against the Vessel Interests is arbitration in the Philippines. Because Aggarao could not have proceeded in this case against the Vessel Interests, Cargotec cannot seek contribution from them.[4] In this way, the Vessel Interests will not be forced to indirectly defend against Aggarao's claims in the United States, when the POEA Contract dictates that those claims may only be pursued through arbitration in the Philippines.

Cargotec attempts to distinguish *Halcyon Lines* and *Cooper Stevedoring* by arguing that the POEA Contract is not analogous to U.S. workers' compensation statutes, but the court does not find this argument persuasive. Like a workers' compensation statute, the POEA Contract was developed by the government—specifically, the Philippine Overseas Employment Administration, which is part of the Philippine Ministry of Labor and Employment. *Aggarao*, 675 F.3d at 361; *see also In re Compl. of Eternity Shipping, Ltd.*, 444 F. Supp. 2d 347, 374–75 (D. Md. 2006). The POEA Contract is not simply a voluntary contract of employment; rather, as explained by the Fourth Circuit, it is meant to help "ensure minimum employment standards for Filipino seafarers employed by foreign corporations." *Aggarao*, 675 F.3d at 361. Finally, like a workers' compensation statute, it is meant to provide the exclusive remedy for employees injured at work. *See id.* at 361; *see also Eternity Shipping*, 444 F. Supp. 2d at 374–75.[5]

---

[4] Of course, Cargotec may still defend on the grounds that the Vessel Interests were the sole or superseding cause of Aggarao's injuries. *See White*, 662 F.2d at 250.

[5] Having found the analogy to workers' compensation statutes persuasive, the court places no significance on the fact that Cargotec is not a signatory to the POEA Contract. As pointed out by the Vessel Interests, "tort defendants need not agree to workers' compensation statutes to lose their right of contribution from covered employers because of those laws." (Vessel Interests' Reply, ECF No. 122, at 7.)

Cargotec argues that, if the POEA Contract is equivalent to a workers' compensation statute, it may still pursue a contribution claim against Nissan and World Car, which were not Aggarao's employers. This argument also must be rejected. In analogizing to a workers' compensation statute, the court does not mean to suggest that the POEA Contract is identical to such a statute. Indeed, the POEA Contract offers broader protection against Aggarao's claims, dictating that he must arbitrate his claims against not only MOL Ship Management but also Nissan and World Car. *Aggarao*, 675 F.3d at 375. Thus, regardless of whether Nissan and World Car were Aggarao's employers, they are afforded the same limited liability under the POEA Contract as MOL Ship Management. The contribution claim in Count II will be dismissed.[6]

## CONCLUSION

For the reasons stated above, the Vessel Interests' motion to dismiss or for summary judgment will be granted. A separate order follows.

March 13, 2014 /s/
Date                                       Catherine C. Blake
                                           United States District Judge

---

[6] Cargotec attempts to avoid dismissal of the contribution claim by arguing that it cannot be forced to arbitrate its claims against the Vessel Interests because (1) it is not a signatory to the POEA Contract and (2) it cannot be bound to the POEA Contract through principles of equitable estoppel. (*See* Cargotec's Opp. at 7–12.) But the Vessel Interests do not seek to compel arbitration and, thus, this argument is irrelevant and does not alter the above analysis.